This appeal arose out of a wrongful death action brought under Mississippi Code 1942 Annotated section 1453 (Supp. 1972) [Mississippi Code Annotated section 11-7-13 (Supp. 1973)] and was begun in the Chancery Court of Lee County as a non-resident attachment.
The mother, Nellie Dickey, brought the action on behalf of herself, two daughters and a son, all being the statutory beneficiaries of a deceased son, Lee Russell Dickey, against Hillard T. Parham, driver of a forty-five foot tractor-trailer truck, his employer, Bud Eaton, and others who are no longer parties to the case.
At the conclusion of the hearing, the chancellor found that the defendant Parham failed to yield the right-of-way while entering onto a through highway from a graveled road in violation of Mississippi Code Annotated section 8197(a) (1956) [Mississippi Code Annotated section 63-3-805 *Page 285 
(1972)] and found his negligence to be the sole proximate cause of the collision and the instantaneous death of Lee Russell Dickey. The court thereupon entered judgment against Parham, the driver, and Eaton, his employer, in the amount of $10,000.
Appellant Dickey assigns as error that the lower court's award of $10,000 was completely inadequate and manifestly wrong.
Appellees, Parham and Eaton, have cross-appealed and contend that the lower court erred in not finding that the deceased was guilty of contributory negligence. We have carefully considered the evidence in this regard and are unable to say that the chancellor was manifestly wrong in finding that the sole proximate cause of Lee Russell Dickey's death was the negligence of the driver of the tractor-trailer truck.
The sole remaining question to be answered is whether or not the award of the chancery court is so grossly inadequate as to shock the conscience of the court and amount to a manifest miscarriage of justice.
The question of the adequacy or inadequacy of verdicts is one of the most perplexing questions with which the courts must struggle. Burlingame v. Southwest Drug Stores of Miss., Inc.,203 So.2d 74 (Miss. 1967); Brown Root, Inc. v. Continental Southern Lines, Inc., 228 Miss. 15, 87 So.2d 257 (1956) and Peerless Supply Co. v. Jeter, 218 Miss. 61, 65 So.2d 240 (1953). And, we do not ordinarily disturb the findings of the trier of facts. However, when it appears from the evidence that the amount of the verdict bears no reasonable relation to the loss suffered and manifests a miscarriage of justice or is palpably against the weight of the evidence, then this Court will set it aside. Burlingame, supra; Boroughs v. Oliver, 226 Miss. 609,85 So.2d 191 (1956); Vaughan v. Bollis, 221 Miss. 589, 73 So.2d 160
(1954).
The elements of damage suffered by these beneficiaries for the death of this twenty-one year old adult would include:
(1) Gratuities that the parent had a reasonable expectation of receiving. Gordon v. Lee, 208 Miss. 21, 43 So.2d 665 (1949); Cumberland Telephone Telegraph Co. v. Anderson, 89 Miss. 732, 41 So. 263 (1906);
(2) Loss to all the beneficiaries of the deceased's society and companionship. Scott v. K-B Photo Service, Inc., 260 So.2d 842
(Miss. 1972); Avery v. Collins, 171 Miss. 636, 157 So. 695
(1934); and
(3) The sum the deceased might have received as the present net value[1] of his own life expectancy. Bush v. Watkins, 224 Miss. 238, 80 So.2d 19 (1955); Gordon v. Lee, supra; Cumberland Telephone Telegraph Co., supra.
There is no mathematical formula recognized in the jurisprudence of Mississippi to ascertain the amount of damages in a wrongful death action and the previous decisions are helpful only as general guides. Illinois Central Railroad Co. v. Nelson,245 Miss. 395, 146 So.2d 69 (1962).
In this regard, we point out that a review of wrongful death cases from 1914 to 1971 reveals wide disparity of verdicts based on a variety of factual situations.[2] Therefore, the adequacy or inadequacy of damages must be determined from a scrutiny of the facts of the particular case under consideration. We would also point out that there is no known case from our Court which puts either a floor or ceiling on the amount of the judgment in a wrongful death case, nor do we intend to *Page 286 
do so by our holding today. Catholic Diocese of Natchez-Jackson v. Jaquith, 224 So.2d 216 (Miss. 1969); Illinois Central Railroad Co. v. Ragan, 252 Miss. 335, 173 So.2d 433 (Miss. 1965).
In the case before us the record establishes that the deceased, Lee Russell Dickey, was twenty-one years of age at the time of his death, had completed three years of college and was entering his senior year when he was killed. He had a life expectancy of 48.6 years and a work expectancy of 41.6 years. He was an industrious young man as evidenced by the fact that he sought and obtained part-time employment as early as 1965 and his compensation for this part-time work as reflected by his social security records was as follows:
 1965 .................... $ 149.96
 1966 .................... 66.25
 1968 .................... 554.50
 1969 .................... 810.66
 1970 .................... 1,054.42

Since the deceased's income from part-time employment steadily increased from year to year, it is reasonable to believe that his earnings would have shown a marked increase after he finished college where he was majoring in Special Education and that it would continue to increase thereafter for a number of years. He was an average student during high school and college and his goal was to be a teacher in special education. Mrs. Nellie Dickey testified that her son would give presents on special holidays and that every summer he worked at part-time jobs and would use the money he earned to help defray his educational expenses as well as to purchase items that were needed around the home. The evidence further shows that there was a close relationship between the deceased and the other members of his family.
The lower court also had before it the testimony of Dr. Paul Oliver, an economist from the University of Mississippi, who testified without objection, that based on the Bureau of the Census statistics, a twenty-one year old male with three years of college would earn an average salary of $9,397 over his working life of 41.6 years, and that it would require the purchase of an annuity in the lump sum of $162,845.65 invested at the rate of five percent to yield an annual salary of $9,397 over this life span. Of course, such testimony is only advisory and is not binding upon the court. Rayner v. Lindsey, 243 Miss. 824,138 So.2d 902 (1962).
In light of the above evidence, we are of the opinion that the award of $10,000 by the chancery court as damages to the beneficiaries for the death of this twenty-one year old industrious college student was so grossly inadequate as to require a reversal of that award.
Therefore, this cause is affirmed as to liability but reversed and remanded to the lower court for a new trial on the question of damages only.
Affirmed as to liability; reversed and remanded for a new trial on question of damages.
RODGERS, P.J., and INZER, SUGG and BROOM, JJ., concur.
[1] See Louisville N.R. Co. v. Garnett, 129 Miss. 795, 93 So. 241 (1922) for a discussion of what constitutes net value.
[2] Wrongful death awards have ranged from a low of $2,500 in 1914, see Illinois Central Railroad Co. v. Handy, 108 Miss. 421, 66 So. 783 (1914) to a high of $200,000 in 1974, see
Standard Furniture Co. v. Wallace, 288 So.2d 461 (Miss. 1974).