# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2011-CA-00933-SCT

*DR. CHARLES H. LANEY*

*v.*

*MARTIN VANCE, INDIVIDUALLY AND o/b/o*
*WRONGFUL DEATH BENEFICIARIES OF*
*MAMIE VANCE HEMPHILL*

| | |
|---|---|
| DATE OF JUDGMENT: | 06/01/2011 |
| TRIAL JUDGE: | HON. WINSTON L. KIDD |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | JOHN MICHAEL COLEMAN |
| | DIANE PRADAT PUMPHREY |
| | BRADLEY K. OVERCASH |
| ATTORNEY FOR APPELLEE: | ISAAC K. BYRD, JR. |
| NATURE OF THE CASE: | CIVIL - WRONGFUL DEATH |
| DISPOSITION: | REVERSED AND REMANDED - 04/25/2013 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE RANDOLPH, P.J., PIERCE AND KING, JJ.**

**PIERCE, JUSTICE, FOR THE COURT:**

¶1.     Martin Vance filed a medical-malpractice/wrongful-death action on behalf of Mamie Vance Hemphill, alleging that Dr. Charles H. Laney was negligent in his treatment of the decedent, Hemphill. Vance initially sued other medical providers, but all but Dr. Laney were dismissed. Trial was held April 4-7, 2011. Dr. Laney was the sole defendant. The jury returned a verdict of $1,000,000 to Vance. In response, Dr. Laney filed this appeal.

## STATEMENT OF THE FACTS

¶2. On July 13, 2005, Mamie Vance Hemphill began treatment at St. Dominic's Hospital. She was admitted with complaints of confusion, decreased appetite, and tremors, and also had end-stage renal disease, respiratory failure, pneumonia, and had been on dialysis. An immediate concern was probable sepsis from the dialysis catheter. This was the only access her doctors had to conduct dialysis. She was treated with Levaquin and Vancomycin, and the catheter was left in place for dialysis. Initially, her body responded well to the antibiotics, and her white blood cell count and temperature lowered. On July 16, 2005, Hemphill's blood pressure dropped unexpectedly, and she began to have abdominal pain. The doctors attempted dialysis, but the pain continued and her blood pressure dropped more. The doctors made plans to remove the catheter and administer additional tests to include a CT scan. Dr. Anne B. Whitehurst, an infectious-disease specialist, was brought in, as well. By 1:45 p.m., on July 16, 2005, Hemphill went into cardiopulmonary arrest and could not be revived.

¶3. Martin Vance (individually and on behalf of wrongful-death beneficiaries of Mamie Vance Hemphill) complained (at trial) that Dr. Charles Laney failed to recognize Hemphill's medical problems and failed to move her to intensive care soon enough before she died. Further, he alleged that Hemphill should have been treated with more than just antibiotics, and that the treatment should have included removal of the allegedly infected catheter. He asserted that this failure to remove the catheter led to septicemia and systematic inflammatory response syndrome and that was the proximate cause of her death.

¶4. The main issue to be resolved by the jury was whether Dr. Laney breached the applicable standard of care by deciding to treat the infection with antibiotics and to leave the allegedly infected catheter in place, since it was the only access for dialysis. The jury returned a verdict for $1,000,000, which included $200,000 in economic damages and $800,000 in noneconomic damages.

### DISCUSSION

¶5. Dr. Laney has presented three issues to this Court. They include:

> **I.** **Whether the trial court erred in remitting the plaintiff's economic damage award to $103,688 when the substantial weight of the evidence proved that the award should be zero.**
>
> **II.** **Whether the trial court erred in instructing the jury when the jury instructions are taken as a whole.**
>
> **III.** **Whether Plaintiff's counsel's improper comments and arguments, including that the damages should represent "the value of a human life," when combined with the erroneous jury instructions, mandate reversal and a new trial.**

Because we find that Issue three (3) is dispositive, we will not address Issues One and Two.

> **III.** **Whether Plaintiff's counsel's improper comments and arguments, including that the damages should represent "the value of a human life," when combined with the erroneous jury instructions, mandate reversal and a new trial.**

¶6. Dr. Laney alleges that the trial court erred in instructing the jury that an element of damages in this case is the "loss of the value of life of Ms. Hemphill."[1] Dr. Laney asserts

---

[1] The trial judge instructed the jury that if it returned a verdict in favor of Plaintiff, it was to award damages as follows:

3

that allowing the "value of life" to be considered as an element of damages is inconsistent with Mississippi Code Section 11-1-69(2), which states, "In any wrongful death action, there shall be no recovery for loss of enjoyment of life caused by death." Miss. Code Ann. § 11-1-69(2) (Rev. 2002). Rather, damages are limited to: "(1) the present net cash value of the life expectancy of the deceased, (2) the loss of the companionship and society of the decedent, (3) the pain and suffering of the decedent between the time of injury and death, and (4) punitive damages." *McGowan v. Estate of Wright*, 524 So. 2d 308, 311 (Miss. 1988) (citing *Jesco, Inc. v. Whitehead*, 451 So. 2d 706, 710 (Miss. 1984)); *Sheffield v. Sheffield*, 405 So. 2d 1314, 1318 (Miss. 1981); *Dickey v. Parham*, 331 So. 2d 917, 918-919 (Miss. 1976); *Thornton v. Ins. Co. of North America*, 287 So. 2d 262, 265 (Miss. 1973); *Scott v. K-B Photo Service, Inc.*, 260 So. 2d 842, 844 (Miss. 1972); *Boyd Constr. Co. v. Bilbro*, 210 So. 2d 637, 643 (Miss. 1968).

¶7.     This Court, in *Rebelwood Apts. RP, LP v. English*, 48 So. 3d 483, 496 (Miss. 2010), held that "[i]n providing a framework for determination of lost future income, courts are not determining the 'value' of a person." Additionally, Mississippi Code Section 11-1-69(2) bars hedonic damages, which are:

> 1. The value of any physical pain and suffering suffered by Mamie Vance Hemphill;
> 2. The loss of income suffered by the death of Mamie Vance Hemphill, if any;
> 3. The value of any loss of companionship, love and society, past, present or future mental anguish and distress suffered by her wrongful death beneficiaries;
> **4. The value of the life of Mamie Vance Hemphill.**

(Emphasis added.)

> The damages for the loss of enjoyment of life, which purportedly compensate an injured person for the loss of quality of life or in the case of a wrongful death action for the value of life itself.

Miss. Code Ann. § 11-1-69(2) (Supp. 2012).

¶8.     Vance asserts that the jury instructions were proper, because they were not objected to at trial and are correct under Mississippi law.  Vance cites *InTown Lessee Associates, LLC v. Howard*, 67 So. 3d 711, 719 (Miss. 2011), quoting, "Our longstanding case law is clear that the failure to make a contemporaneous objection to the evidence waives the issue on appeal."  Vance notes that the parties clashed over various parts of the jury instructions. Further, Vance argues that the jury instructions actually addressed in meeting with the judge were over the "quality of life" section and not a clear objection to the "value of life" language.

¶9.     In his reply brief, Dr. Laney asserts that the parties provided the trial court with lengthy arguments about the instructions, along with objections to them.  Further, Dr. Laney recognizes that the trial court already was apprised of the parties' positions, objections, and arguments, and constant objections and arguments would cause the issue to never cease. The Legislature addressed this issue when it amended Mississippi Code Section 11-1-69(2) to include, "In any wrongful death action, there shall be no recovery for loss of enjoyment of life caused by death." Miss. Code Ann. § 11-1-69(2) (Supp. 2012).  Although we agree that Dr. Laney's attorney could have clarified her point more precisely during the conference with the judge on jury instructions, she did not fail to object.  In a situation like this, based on statutory language and the Legislature's recent amendments following tort reform in 2002,

5

we find that it was reversible error for the trial judge to instruct the jury that it might consider the "value of life" of the deceased in awarding damages.

¶10.    Additionally, the statements made in Vance's attorney's closing argument were prejudicial to Dr. Laney.  Dr. Laney argues that many of Vance's counsel's comments, including those addressed in closing arguments, were improper, and we agree.  During closing arguments, counsel for Vance stated the following to the jury:

> The first thing they do in a communist Nazi Country is destroy the jury system.  Why do they want to destroy the jury system?  Because you represent the line between tyranny and democracy, right and wrong.  You have the power. . . You have more power today than the President of the United States. . . .
>
> But the question is, will you have courage today?  Do you have the God given courage. . . .
>
> The value of the life of Mamie Hemphill . . . . I had to bring each one of the kids up here and ask them, what did your mother mean to you?  What did she do with you?  What did she do for you?  The value of a loss.

Based on the prejudicial nature of the foregoing statements and other statements by counsel for Vance, which were presented to the jury during closing arguments, we reverse and remand for a new trial.

## CONCLUSION

¶11.    Because the trial judge committed reversible error in instructing the jury that they could consider the "value of life" of the deceased in awarding damages, and because counsel for Vance made improper and prejudicial comments to the jury during closing arguments, we reverse and remand for a new trial.

¶12.    **REVERSED AND REMANDED.**

6

**RANDOLPH, P.J., LAMAR, KITCHENS, KING AND COLEMAN, JJ., CONCUR. WALLER, C.J., DICKINSON, P.J., AND CHANDLER, J., NOT PARTICIPATING.**